IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LUIS GARCIA

    Plaintiff

v.                                             Civil No.: BPG-22-1423

BALTIMORE POLICE DEPARTMENT

    Defendant

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Currently pending before the court are defendant's Motion to Dismiss ("defendant's Motion") (ECF No. 15), plaintiff's Motion in Opposition to Defendant's Motion to Dismiss ("plaintiff's Opposition") (ECF No. 17), and defendant's Reply to Plaintiff's Response in Opposition to Baltimore Police Department's Motion to Dismiss ("defendant's Reply") (ECF No. 23). The issues are fully briefed, and no hearing is necessary. Loc. R. 105.6. For the reasons discussed herein, defendant's Motion to Dismiss (ECF No. 15) is granted.

**I.**     **BACKGROUND**

Plaintiff Luis Garcia ("plaintiff"), a Hispanic man, began working for defendant Baltimore Police Department ("BPD" or "defendant") in April 2014. (ECF No. 1 ¶¶ 14, 17). Plaintiff alleges the following facts in his Complaint. Starting in January 2018, coworkers and supervisors in plaintiff's Unit repeatedly accused him of engaging in a sexual relationship with a female member of the Unit. (Id. ¶ 21). The comments often referred to plaintiff's sex and national origin. (Id.) Plaintiff was subjected to further adverse consequences when he objected to the accusations, including being denied backup on calls, targeted with complaints, and placed under investigation. (Id. ¶ 22). On December 17, 2018, plaintiff filed an EEOC complaint alleging discrimination

based on sex, national origin, and retaliation. (Id.) In December 2019, plaintiff filed a lawsuit in this court, which settled in March 2020. (Id. ¶ 23).

Following the lawsuit, plaintiff alleges that he has suffered increased retaliation, including "constantly facing accusations of being 'corrupt,' being refused overtime on certain shifts in an effort to affect his pay, and [ ] often [being] skipped over for positions that [he] is overqualified for." (Id. ¶ 25). Specifically, plaintiff alleges that he was denied the position of Detective, which he applied for in the Fall of 2020 (Id. ¶ 26), and on three occasions, a promotion to Sergeant despite being qualified for the rank. (Id. ¶¶ 27-28). Plaintiff further alleges that defendant manipulated the list of qualified applicants for both the Detective and Sergeant positions to avoid promoting plaintiff. (Id. ¶¶ 27-29).

On March 5, 2021, plaintiff filed a second EEOC complaint, alleging retaliation stemming from his 2018 EEOC complaint and the resulting lawsuit. (Id. ¶ 31). Plaintiff received his Right to Sue letter from the EEOC by email notification on March 9, 2022. (Id. ¶ 9, ECF No. 17-1 at 3). On June 10, 2022, plaintiff filed suit in this court against defendant Baltimore Police Department ("defendant"). Plaintiff asserts four counts against defendant: (I) retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq; (II) hostile work environment in violation of Title VII; (III) violation of plaintiff's civil rights pursuant to 42 U.S.C. § 1981; and (IV) violation of the Maryland Fair Employment Practices Act ("MFEPA"), Maryland Code, State Gov't, § 20-601, et seq. Defendant moves to dismiss all counts of plaintiff's Complaint. (ECF No. 15).

II. **STANDARD OF REVIEW**

Defendant moves to dismiss Counts I, II, and III of plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Under Rule 12(b)(6), a complaint may be dismissed for

failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). When ruling on such a motion, the court must "accept[] all well-pleaded allegations in the plaintiff's complaint as true" and "draw[] all reasonable factual inferences from those facts in the plaintiff's favor." Id. at 244. Nonetheless, "[t]he mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Rather, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." Ashcroft, 556 U.S. at 678 (internal citation and quotation marks omitted). A plaintiff satisfies this standard not by forecasting evidence sufficient to prove the elements of the claim, but by alleging sufficient facts to establish those elements. Walters, 684 F.3d at 439. Accordingly, "while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Defendant moves to dismiss Count IV of plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). When ruling on a Rule 12(b)(1) motion for lack of subject matter jurisdiction, the court regards the pleadings as "mere evidence on the issue," and may "consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp., 166 F.3d 642, 647 (4th Cir. 1999). While the plaintiff bears the burden of proving that the court has jurisdiction over the claim or controversy at issue, a Rule 12(b)(1) motion should only be granted if the "material jurisdictional facts are not

3

in dispute and the moving party is entitled to prevail as a matter of law." Ferdinand-Davenport v. Children's Guild, 742 F. Supp. 2d 772, 777 (D. Md. 2010).

## III. DISCUSSION

Defendant moves to dismiss all counts of plaintiff's Complaint. Specifically, defendant contends that plaintiff failed to file his Complaint within the 90-day period following the issuance of the notice of right to sue letter. (ECF No. 15-2 at 4-6). In addition, defendant argues that plaintiff fails to state a claim with regard to his retaliation, hostile work environment, and § 1981 claims. (Id. at 6-8, 13-15). Defendant asserts that plaintiff's hostile work environment claim should also be dismissed because plaintiff failed to exhaust all administrative remedies. (Id. at 9-13). Finally, defendant maintains that plaintiff's MFEPA claim should be dismissed because defendant has sovereign immunity from state law claims. (Id. at 16-19).

### A. Timeliness

Defendant contends that plaintiff's Complaint should be dismissed with prejudice because he failed to timely file suit within the 90-day period following the issuance of the notice of right to sue letter. (Id. at 4). Plaintiff responds that the 90-day period was not triggered until plaintiff actually viewed the document, and that plaintiff is entitled to application of the mailbox rule because the date of receipt is in dispute. (ECF No. 17-1 at 2-3). It is well-settled that "[t]o bring a Title VII claim in federal court, a plaintiff must file suit within ninety days of receiving notice of the right to sue." Strothers v. City of Laurel, Md., 118 F. Supp. 3d 852, 860-61 (D. Md. 2015). A plaintiff who fails to file his claim within the statutory period is procedurally barred from pursuing the claim in court. See Quinn v. Copart of Conn., Inc., 791 Fed. App'x 393, 395 (4th Cir. 2019) ("[I]t is well settled that a Title VII claimant who fails to file a complaint within the 90-day period generally forfeits his right to pursue his claims."). In determining the date on which

4

the period begins to run, the Fourth Circuit has rejected the adoption of an "actual receipt" rule. Harvey v. City of New Bern Police Dep't, 813 F.2d 652, 654 (4th Cir. 1987). Instead, the court applies "a flexible rule which requires a case-by-case examination to determine if equitable tolling of the filing period is appropriate." Id.

There is no dispute that plaintiff and his counsel received the email containing directions to access the right to sue letter on March 9, 2022. (ECF Nos. 17-1 at 3, 23 at 1-2). Plaintiff contends, however, that the 90-day period was not triggered until he viewed the letter on March 14, 2022, and directed the email to counsel's attention. (ECF No. 17-1 at 3). As a result, he claims that the deadline for filing was June 12, 2022, and his June 10, 2022 filing was timely. (Id.) Contrary to plaintiff's position, this court has held that delivery of an email triggers the running of the filing period. See Ward v. Comm'r of Soc. Sec., No. WDQ-11-1004, 2012 WL 122412, at *2, *4 (D. Md. Jan 12, 2012) (delivery of an email notifying plaintiff of the right to sue letter triggered the 90-day period in which to file a federal lawsuit on plaintiff's Title VII claims). Other courts in the Fourth Circuit have similarly held that receipt of the email notice is sufficient to trigger the 90-day period, and failure to read one's emails is an insufficient basis upon which to toll the filing deadline. See Wolfe v. Wps Health Solutions, Inc., No. 20-CV-175, 2021 WL 1992027, at * (E.D. Va. Apr. 7, 2021) ("The fact that [plaintiff] neglected to read her emails does not change the fact that she received delivery of her notice of right to sue via email on August 6, 2020, and that this receipt triggered the beginning of the 90-day period."). Further, counsel's receipt serves as constructive notice to plaintiff of the right to sue letter. See Gatewood v. Johnson, No. JKB-16-854, 2016 WL 6569060, at *3-*4 (D. Md. Nov. 3, 2016) ("Plaintiff received constructive notice of the EEOC's decision when her attorneys are presumed to have received such notice"). That counsel received notice of the right to sue letter but did not access the letter does not toll the

deadline. Id. As a result, plaintiff's receipt of the email on March 9, 2022 triggered the 90-day period to file, such that the deadline to file was June 7, 2022, and plaintiff's June 10, 2022 Complaint was untimely.

Plaintiff argues that the date of receipt is in dispute, such that Federal Rule 6(d) (i.e., the mailbox rule) applies and the letter is presumed to have been delivered three days after it was mailed (i.e., emailed). (ECF No. 17-2 at 3). Defendant counters that the delivery date is not in dispute at all, but rather that the evidence shows that plaintiff received the email from the EEOC on March 9, 2022. (ECF No. 23 at 2). The court is persuaded by defendant's argument. "[I]f the actual date of receipt is confirmed by evidence, that date governs." Nguyen v. Inova Alexandria Hosp., 187 F.3d 630, *3 (4th Cir. 1999) (per curiam). Plaintiff does not dispute that the email was delivered to plaintiff's inbox on March 9, 2022, nor is there any dispute that the notice was sent and received by email, and not by postal mail. Under these circumstances, it is not appropriate to apply the mailbox rule.

Finally, the court considers whether plaintiff has asserted any facts sufficient to support an equitable tolling argument. Plaintiff suggests that he has provided evidence that he did not receive notice until March 14, 2022. (ECF No. 17-1 at 4). In the absence of a showing that there was not sufficient time to act timely, the Fourth Circuit has made clear that where plaintiff knows of the right to sue within a matter of days following its delivery, equitable tolling will not apply. See e.g., Nguyen, 187 F.3d at *4 (declining to apply equitable tolling when plaintiff had 80 days left to file after reading the letter); Watts-Means, 7 F.3d at 42 (declining to apply equitable tolling when plaintiff had 85 days left to file after retrieving letter from post office); Harvey, 813 F.2d at 654 (declining to apply equitable tolling when plaintiff had 84 days left to file after reading the letter). Here, according to plaintiff, he read the letter and forwarded it to counsel's attention five

days after receipt. (ECF No. 17-1 at 3). Plaintiff had 85 days to file his Complaint before the 90-day deadline on June 7, 2022, and, therefore, there is no justification for tolling the 90-day filing period on that basis. As a result, plaintiff's Complaint must be dismissed as time barred. Accordingly, the court grants defendant's Motion to Dismiss, and plaintiff's Complaint is dismissed with prejudice. Although the court concludes that plaintiff's Complaint should be dismissed, the court nevertheless examines the parties' arguments with respect to the individual counts of plaintiff's Complaint.

### B. Retaliation Claim (Count I)

Defendant argues that plaintiff fails to state a claim for retaliation. (ECF No. 15-2 at 5-8). To establish a prima facie case of retaliation under Title VII, plaintiff must show: (1) he engaged in a protected activity; (2) the employer acted adversely against him; and (3) there was a causal connection between the protected activity and the adverse employment action. Guessous v. Fairview Prop. Investments, LLC, 828 F.3d 208, 216–17 (4th Cir. 2016). Here, the parties do not dispute the first element of a prima facie case. Plaintiff engaged in protected activity when he filed his EEOC Charge in 2018 and in filing his subsequent federal lawsuit in 2019. (ECF No. 15-2 at 7).

As to the second element of a prima facie case, whether an adverse employment action occurred, defendant suggests that plaintiff's non-selection for the Detective position was not an adverse employment action. (Id.) "A plaintiff can demonstrate that an employer 'acted adversely' by showing that 'a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Lewis v. Baltimore City Bd. of Sch. Comm'rs, 187 F. Supp. 3d 588, 595 (D. Md. 2016) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548

U.S. 53, 68 (2006)). An adverse action in a retaliation claim must be "materially adverse." Burlington N., 548 U.S. at 68. This requirement "seeks to differentiate those harms that work a 'significant' detriment on employees from those that are relatively insubstantial or 'trivial.'" Adams v. Anne Arundel Cnty. Pub. Sch., 789 F.3d 422, 431 (4th Cir. 2015) (quoting Burlington N., 548 U.S. at 68). Defendant maintains that a change of position from Officer to Detective is not a promotion, and therefore, plaintiff's non-selection for the Detective position is not an adverse employment action. (ECF No. 15-2 at 7). Plaintiff does not address this argument. Although defendant may be correct that non-selection for the Detective position does not constitute an adverse employment action, plaintiff's allegation that defendant denied him a promotion to Sergeant, which the court accepts as true for purposes of defendant's Motion to Dismiss, constitutes an adverse employment action. See e.g., Musema v. Baltimore Cty. Police Dep't, No. ADC-18-158, 2019 WL 454093, at *7 (D. Md. Feb. 5, 2019) (failure to promote plaintiff to Sergeant, if plaintiff can prove he is qualified for promotion, may constitute an adverse employment action). Thus, plaintiff satisfies the second element of a prima facie case.

Finally, as to the third element, "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 352 (2013). To state a prima facie case of retaliation, a plaintiff may demonstrate that "the adverse act bears sufficient temporal proximity to the protected activity." Johnson v. United Parcel Service, Inc., 839 Fed. App'x 781, 784 (4th Cir. 2021) (citing Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001)). Where the basis of the causal connection is temporal proximity, "a lapse of as little as two months between the protected activity and an adverse employment action is 'sufficiently long so as to weaken

significantly the inference of causation.'" Clark v. DynCorp Int'l LLC, 962 F. Supp. 2d 781, 790 (D. Md. 2013) (citation omitted).

Defendant contends that plaintiff cannot satisfy this element because there is no causal relationship between the alleged adverse employment actions and plaintiff's protected activities. (ECF No. 15-2 at 8). Plaintiff alleges that defendant was aware of plaintiff's engagement in protected activity prior to the adverse actions, and that the adverse actions are "a direct result of [p]laintiff having previously engaged in statutorily-protected activity." (ECF No. 1 at 7 ¶ 5-6). The alleged protected activity occurred when plaintiff filed his EEOC charge in December 2018 and when plaintiff subsequently filed suit in this court in 2019. (Id. at ¶ 22-23). Plaintiff's suit against defendant settled in March 2020. (Id.) Plaintiff's Complaint alleges that the earliest retaliatory activity, his non-selection for the Detective position, first occurred months later in Fall of 2020. (Id. ¶ 26). Plaintiff does not provide the dates for any of the three subsequent non-selections for the Sergeant promotion, although the Complaint suggests these events occurred after his non-selection for the Detective position. (Id. ¶¶ 27-28).

Drawing all rational inferences from the allegations of plaintiff's Complaint in plaintiff's favor, all of the retaliatory activity occurred at least six months after plaintiff's lawsuit was settled. (Id.) "Although there is no 'bright-line rule' for temporal proximity, courts within our Circuit have found that shorter lapses of time similar to the three-month period . . . are insufficient to infer a causal relationship without other evidence of a causal link." Roberts v. Glenn Indus. Grp., Inc., 998 F.3d 111, 127 (4th Cir. 2021). Plaintiff offers no additional evidence of a causal link between the alleged retaliatory conduct on the part of defendant and his EEOC charge in 2018 and lawsuit in 2019. Indeed, plaintiff does not allege that any of the same supervisors or officers were involved

in handling both his earlier protected activity and his non-selection for Detective or Sergeant. Accordingly, the court grants defendant's Motion on Count I.

### C. Hostile Work Environment Claim (Count II)

Defendant argues that plaintiff's hostile work environment claim should be dismissed because plaintiff failed to exhaust administrative remedies and fails to state a claim. (ECF No. 15-2 at 9). Specifically, defendant contends that plaintiff's EEOC charge did not include a claim for hostile work environment, such that he is procedurally barred from bringing that claim now. (Id.) Plaintiff counters that his hostile work environment claim does not exceed the scope of his EEOC charge. (ECF No. 17-1 at 7). Before filing a lawsuit in federal court, Title VII requires a plaintiff to exhaust administrative remedies by filing a charge with the EEOC. Sydnor v. Fairfax Cnty., Va., 681 F.3d 591, 593 (4th Cir. 2012). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Jackson v. Maryland, No. DLB-20-270, 2021 WL 6072929, at *4 (D. Md. Dec. 23, 2021) (citation omitted). A plaintiff, however, fails to exhaust his administrative remedies when "his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." Chacko v. Patuxent Inst., 429 F.3d 505, 506 (4th Cir. 2005). In addition, if "the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." Id. at 509 (quoting Dennis v. Cnty. of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995)).

Defendant argues that plaintiff's EEOC charge is devoid of any allegations related to hostile work environment, but rather focuses on discrete incidents in which he was not selected for

10

the Detective position or promoted to Sergeant. (ECF No. 15-2 at 12). Plaintiff responds that although his charge focused on separate incidents, when taken together they form a continuous and pervasive pattern of retaliation in the form of "verbal harassment; denial of overtime; and denial of [p]laintiff's ability to pursue upward mobility in his career." (ECF No. 17-1 at 7). The Fourth Circuit has held that "the allegation of a discrete act or acts in an administrative charge is insufficient when the plaintiff subsequently alleges a broader pattern of misconduct." Chacko, 429 F.3d at 509. While "[c]ourts do not require a plaintiff to have invoked a hostile work environment claim by name or to use specific 'magic words' in order to exhaust it . . . the plaintiff must offer at least some suggestion of a hostile work environment in the charge narrative, such as by referring to an ongoing pattern of conduct or describing a workplace pervaded by abuse." Gaines v. Baltimore Police Dep't, No. ELH-21-1211, 2022 WL 1451629, at *18 (D. Md. May 9, 2022) (citation omitted).

Plaintiff's EEOC charge alleges that he was subjected to retaliation and references two incidents in which he was denied the position of Detective and not promoted to Sergeant. (ECF No. 15-3 at 2). Although plaintiff checked the box for "Continuing Action," the "Date(s) Discrimination Took Place" included only a single day—February 2, 2021. (Id.) A hostile work environment claim based on continuous, pervasive conduct would not "reasonably be expected to follow" a charge that claims discrimination took place on a single day. Miles v. Dell, Inc., 429 F.3d 480, 491 (4th Cir. 2005) (plaintiff's retaliation claim could not have been "reasonably expected to follow from an investigation of [plaintiff's] sex and pregnancy discrimination claims."). Further, plaintiff's charge contains no facts to support a claim of hostile work environment; rather, the charge presents a straightforward retaliation argument. (ECF No. 15-3 at

2). Accordingly, plaintiff has failed to exhaust administrative remedies on his hostile work environment claim.

Even if plaintiff exhausted his administrative remedies on his hostile work environment claim, defendant argues that plaintiff fails to state a claim for relief. (ECF No. 15-2 at 9). A hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015) (citation omitted). To adequately plead a hostile work environment, a plaintiff must allege facts showing: "(1) unwelcome conduct; (2) that is based on the plaintiff's [protected status]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." Strothers, 895 F.3d at 328 (quoting Okoli v. City of Baltimore, 648 F.3d 216, 220 (4th Cir. 2011)). With respect to the third element, an abusive work environment requires a showing that the work environment is perceived and would be perceived by a reasonable person in the plaintiff's position as hostile or abusive. Boyer-Liberto, 786 F.3d at 277. "'[W]hen determining whether the harassing conduct was objectively severe or pervasive, we must look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Perkins v. Int'l Paper Co., 936 F.3 196, 208 (4th Cir. 2019). An isolated incident of harassment, however, may be sufficient if it is "extremely serious." Boyer-Liberto, 786 F.3d at 277.

Plaintiff's allegations do not rise to the level of severe or pervasive conduct. Plaintiff's Complaint alleges that he has been subjected to petty charges, denied overtime, branded "corrupt,"

and denied promotion. (ECF No. 1 at 10 ¶ 4). Accepting these allegations as true, this conduct does not constitute the type of harassing, threatening, or humiliating conduct Title VII is meant to prohibit. See e.g., Hoffman v. Baltimore Police Dep't, 379 F. Supp. 2d 778, 791 (D. Md. 2005) (dismissing plaintiff's hostile work environment claim where plaintiff "was forced to relocate his office numerous times without justification, his work was subjected to 'intense scrutiny,' he was given increased case load and forced to work longer uncompensated hours, and his job title was downgraded."). Plaintiff's allegations that he was subjected to "petty charges" and branded "corrupt," without more do not constitute severe or pervasive conduct. "'[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'" Perkins, 936 F.3d at 208 (citation omitted). Plaintiff's allegation that he was denied the position of Detective or Sergeant three times, similarly fails to describe the type of severe or pervasive conduct necessary to state a hostile work environment claim. (ECF No. 1 at 10 ¶ 4). In the absence of factual allegations identifying objectively severe or pervasive conduct, plaintiff fails to state a claim for hostile work environment.

In sum, the court concludes that plaintiff failed to exhaust his administrative remedies by not including his hostile work environment claim in his EEOC charge. Additionally, the court concludes that plaintiff fails to state a hostile work environment claim upon which relief could be granted. Accordingly, the court grants defendant's Motion on Count II.

**D. Section 1981 Claim (Count III)**

Defendant contends that plaintiff fails to state a retaliation or hostile work environment claim pursuant to 42 U.S.C. § 1981. The cause of action "created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental

units." Jett v. Dallas Ind. Sch. Dist., 491 U.S. 701, 733 (1989). "The framework of proof for claims of intentional employment discrimination brought under § 1981 and § 1983 is the same as the framework applicable to a Title VII claim." Gaines, 2022 WL 1451629 at *30. Plaintiff's Opposition does not address defendant's argument that he fails to state a claim under § 1981, which defendant contends constitutes a concession that the Complaint fails to state a § 1981 claim and an abandonment of the claim. (ECF No. 23 at 11). For the same reasons detailed above, because plaintiff failed to state a claim for retaliation and hostile work environment under Title VII, plaintiff also fails to state a claim under § 1981.

Even if plaintiff stated a prima facie case of retaliation pursuant to § 1981, defendant argues that plaintiff completely fails to plead a Monell claim as required to maintain a § 1983 claim against defendant. (ECF No. 23 at 13). Only when "an injury was inflicted by a government's 'lawmakers or by those whose edicts or acts may fairly be said to represent official policy'" may a government official be held liable under § 1983 for actions taken in their official capacity. City of St. Louis v. Praprotnik, 485 U.S. 112, 121-22 (1988) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978)). Not every decision of a municipality gives rise to liability pursuant to § 1983. "[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Bd. Of Cnty. Comm'rs of Bryan Cnty. Okl. v. Brown, 520 U.S. 397, 404 (1997). A plaintiff may demonstrate deliberate conduct by offering proof of a "persistent and widespread practice" giving rise to injury, where the municipality "fail[s] to put a stop to or correct a widespread pattern of unconstitutional conduct." Spell v. McDaniel, 824 F.2d 1380, 1390-91 (4th Cir. 1987). A plaintiff may demonstrate the existence of an official policy or custom through: (1) a written ordinance or regulation; (2) certain

affirmative decisions of a person with final policymaking authority; or (3) certain omissions that "manifest deliberate indifference to the rights of citizens." Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999).

In plaintiff's Opposition he contends that there is a "practice of retaliation throughout BPD in an effort to quiet those who speak out against corruption that has become so persistent and widespread as to be considered a custom." (ECF No. 17-1 at 10). Plaintiff's Complaint, however, only conclusorily alleges that he experienced retaliation as a result of this custom. (ECF No. 1 ¶ 37). Although plaintiff references the widespread institutional problems of the BPD (Id.), plaintiff makes no argument with regard to how any specific practices are connected to his alleged discrimination, or who the alleged policymaker is. While plaintiff's Opposition aims to fill in some of the gaps in plaintiff's Complaint, for example, by referencing "Anti-Retaliation Policy 1729" (ECF No. 17-1 at 10), plaintiff's Complaint cannot be amended by plaintiff's arguments advanced in his Opposition. See Middleton v. Baltimore Police Dep't, No. ELH-20-3536, 2022 WL 268765, at *27 (D. Md. Jan. 28, 2022) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (citation omitted). Because plaintiff fails to adequately plead a Monell claim and fails to state a claim for relief, the court grants defendant's Motion on Count III.[1]

---

[1] With regard to plaintiff's Counts I and III, if the court was not dismissing plaintiff's case as untimely, defendant's Motion would be granted without prejudice and with leave to file an Amended Complaint. Because the timeliness error is incurable through amendment, however, dismissal is granted with prejudice and without leave to amend. See United States v. Manor Car, Corp., 851 F.3d 293, 305 (4th Cir. 2017) ("Furthermore, when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend"). Further, to the extent plaintiff's hostile work environment claim is dismissed for failure to exhaust all administrative remedies, plaintiff would not have been entitled to amend his Complaint on Count II. See Hejirika v. Md. Div. of Correction, 264 F. Supp. 2d 341, 346 (D. Md. 2003) (dismissing plaintiffs' hostile work environment claim without leave to amend "because plaintiffs did not include such allegations in their charges with the EEOC and failed to exhaust administrative remedies with respect to this claim.").

### E. **MFEPA Claim (Count IV)**

Defendant asserts that plaintiff's MFEPA claim in Count IV should be dismissed because plaintiff fails to provide the notice required by the Local Government Torts Claims Act ("LGTCA"), and defendant is entitled to sovereign immunity. (ECF No. 15-2 at 16-19, 16 n.6). Plaintiff maintains that sovereign immunity does not apply to defendant in this case, and that he may bring a parallel state claim on the same basis as his Title VII claim. (ECF No. 17-1 at 11). The LGTCA provides that a plaintiff must give local government defendants notice of claims within 180 days of injury. Md. Cts. & Jud. Proc. § 5-304(a). "The notice shall be in writing and shall state the time, place, and cause of the injury." Id. § 5-304(b)(3). "Compliance with the LGTCA is a condition precedent to maintaining suit against a local government." Edwards v. Montgomery College, TDC-17-3802, 2018 WL 4899311, at *8 (D. Md. Oct. 9, 2018) (citing Rios v. Montgomery Cnty., 872 A.2d 1, 14 (Md. 2005)). "As a result, a plaintiff is required, in the complaint, to plead compliance with the notice provision of the LGTCA." Id. A timely-served EEOC charge, however, "can be used to satisfy the notice requirement [if] it 'provide[s] the identity of the claimant, the time and place of the event, the nature of the claim, and the [p]laintiff's intent to pursue litigation.'" Brown v. Baltimore Police Dep't, RDB-11-00136, 2011 WL 6415366, at *13 (D. Md. Dec. 21, 2011) (quoting Nelson v. Cty. of Crisfield, BEL-10-1816, 2010 WL 4455923, at *2 (D. Md. Nov. 5, 2010).

The court need not decide whether plaintiff satisfied the LGTCA notice requirement by filing his EEOC charge because defendant is entitled to sovereign immunity from plaintiff's MFEPA claim. See Estate of Anderson v. Strohman, 6 F. Supp. 3d 639, 643 (D. Md. 2014) (holding that the LGTCA did not bar the BPD from asserting sovereign immunity and, therefore, dismissing state law claims against the BPD with prejudice); see also Jackson v. Baltimore Police

16

Dep't, WDQ-11-3569, 2013 WL 1121412, at *9 (D. Md. March 15, 2013) (dismissing state law claims against the BPD for the same reasons).  This court has repeatedly held that the BPD is immune from state law claims on sovereign immunity grounds.  See e.g., Effland v. Baltimore Police Dep't, No. CCB-20-3503, 2022 WL 3107144, at *6 (D. Md. Aug. 4, 2022) (dismissing plaintiff's state law claims against BPD on sovereign immunity grounds).  "Put simply, the LGTCA only prohibits the BPD from asserting sovereign immunity to avoid its statutorily-imposed duty to defend or indemnify its employees."  Id. (citing Baltimore Police Dep't v. Cherkes, 780 A.2d 410, 424 (Md. Ct. Spec. App. 2001)).  "But the BPD cannot be vicariously liable and may still raise sovereign immunity in its own defense.  Even under the LGTCA, Plaintiffs cannot bring state law claims directly against the BPD for the actions of Baltimore police officers acting within the scope of their employment."  Id.  Accordingly, the court grants defendant's Motion on Count IV.[2]

### IV. CONCLUSION

For the foregoing reasons, defendant's Motion to Dismiss (ECF No. 15) is granted.  Plaintiff's Complaint is dismissed with prejudice and without leave to amend.  A separate order will follow.

Date: April 21, 2023

/s/
Beth P. Gesner
Chief United States Magistrate Judge

---

[2] The court notes that even if plaintiff's Complaint were not dismissed with prejudice as time barred, leave to amend Count IV would be denied because defendant is entitled to sovereign immunity and cannot be liable for the violation alleged by plaintiff under the MFEPA.  No amendment of the complaint, therefore, would cure that defect.  See Estate of Anderson, 6 F. Supp. 3d at 646 (denying plaintiffs' request for leave to amend the Complaint because defendant "cannot be liable for the alleged offenses" on sovereign immunity grounds).